**UNITEDS STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **KEVIN M. MORNEAULT,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**RENEAU J. LONGORIA,**<br><br>**SELECT PORTFOLIO SERVICING, INC.,**<br><br>**and**<br><br>**NEWREZ, LLC,**<br><br>**Defendants** | **Case No. 1:25-cv-00322-LEW** |

**FIRST AMENDED COMPLAINT**

As his First Amended Complaint, Plaintiff, Kevin M. Morneault, complains against Defendants Reneau J. Longoria, Select Portfolio Servicing, Inc., and NewRez, LLC and says:

## I. Venue.

1. Venue is appropriate in this court as Plaintiff is a resident of the City of Bangor in Penobscot County, Maine and the acts complained of occurred within Penobscot County, Maine.

## II. Jurisdiction.

2. By virtue of the cause of action arising under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, asserted in Counts IV and VII below, this court has federal question jurisdiction action of this action pursuant to 28 U.S.C. § 1331.

## III. Parties.

3. Plaintiff, Kevin M. Morneault (hereafter "Plaintiff" or "Morneault"), is an individual who resides in the City of Bangor, County of Penobscot and State of Maine.
4. Defendant, Reneau J. Longoria (hereafter "Longoria"), is an individual who is an attorney maintaining a principal office in Beverly, Massachusetts.
5. Longoria has been the managing member of the law firm, Doonan, Graves & Longoria, LLC, which has its principal office in Beverly, Massachusetts (hereafter "the Law Firm"), since October 1, 2021, and is the 100% owner of the Law Firm
6. Defendant, Select Portfolio Servicing, Inc. (hereafter "SPS"), is a corporation established under the laws of the State of Utah and having a principal place of business in Salt Lake City, Utah.
7. Defendant, NewRez, LLC, is a limited liability company organized under the laws of the State of Delaware and having a principal place of business in Fort Washington, Pennsylvania.

## IV. Facts relevant to all counts.

8. Morneault is the owner of the property at 412 Essex Street in Bangor Maine (hereafter "the Property"), having acquired title to the Property by deed dated December 21, 2005, and has maintained the Property as his principal residence since before the making of the mortgage loan in 2008 which is described hereafter.
9. Around January 24, 2008, Morneault obtained a mortgage loan secured by the Property from First Horizon Home Loans, a division of First Tennessee Bank, N.A. in the amount of $106,000 (the "Loan") evidenced a Note and Mortgage upon the Property of same date, copies of which are filed herewith as **Exhibits 1 and 2.**

10. Morneault obtained the Loan for personal, household or family purposes.
11. The Loan was a debt of Morneault within the meaning of 32 M.R.S. § 11002(5) and 15 USC § 1692a(5).
12. On or about February 20, 2008, the Loan was sold to Federal National Mortgage Association (hereafter "Fannie Mae") and the Note, indorsed in blank, was delivered to Fannie Mae or its document custodian.
13. As of January 1, 2009, JPMorgan Chase Bank National Association (hereafter "Chase") was the mortgage servicer of the Loan for Fannie Mae.
14. Chase, in acting as servicer of the Loan, was the agent for Fannie Mae as owner of the Loan.
15. Chase had a contract with Fannie Mae to act as servicer of the Loan at issue in this action and for other loans owned by Fannie Mae.
16. The contract between Fannie Mae as owner of the Loan and Chase as servicer of the Loan required Chase to service the Loan in accordance with the Fannie Mae Single Family Servicing Guide (the "Guide") as published by Fannie Mae and periodically revised by it.
17. On or about October 22, 2012, Chase commenced a foreclosure action on the Loan in the Bangor District Court as Docket Number RE-12-172 (the "2012 Action").
18. Before the commencement of the 2012 Action, Chase obtained possession of the blank indorsed note from Fannie Mae or its document custodian or said document custodian became the custodian of the Note for the benefit of Chase, so as to make Chase the holder of the Note and the party entitled to enforce it.

Fannie Mae remained in continuous ownership of the Loan from February 20, 2008 through July 29, 2021.

19. Before the commencement of the 2012 Action, and on or about February 9, 2012, Mortgage Electronic Registration Systems, Inc. delivered to Chase a document entitled "Assignment of Mortgage," relating to the Loan.

20. Chase was authorized by Fannie Mae to act on behalf of Fannie Mae and did act on behalf of Fannie Mae in the commencement and prosecution of the 2012 Action.

21. Fannie Mae knew that Chase had commenced the 2012 Action and agrees that its interests were adequately represented by Chase and other servicers of the Loan during the 2012 Action.

22. The 2012 Action was tried before a judge of the Bangor District Court and on February 6, 2014, that court entered a judgment of foreclosure in favor of Chase.

23. Morneault appealed the foreclosure judgment in favor of Chase to the Maine Law Court.

24. By its Memorandum of Decision dated December 23, 2014, the Law Court vacated the judgment of foreclosure in favor of Chase and "[r]emanded for entry of judgment for Morneault." A copy of the Memorandum of Decision is filed herewith as **Exhibit 3**.

25. Following the remand order of the Law Court, on or about January 29, 2015, the Bangor District Court entered judgment for Morneault in the 2012 Action. A copy of that judgment is filed herewith as **Exhibit 4.**

26. On or about July 3, 2019, Chase, acting as servicer for and agent of Fannie Mae, filed a motion in the 2012 Action pursuant to M.R. Civ. P. 60(b) requesting that the court alter its judgment of January 29, 2015, for Morneault to be a dismissal of the 2012 Action without prejudice.

27. By order dated August 24, 2021, the Bangor District Court denied the July 3, 2019, Rule 60(b) motion of Chase stating "The Law court could have, but did not, order dismissal for lack of standing. The motion for relief fails as a result." A copy of that order, notated on last page the motion of Chase, is filed herewith as **Exhibit 5.**

28. By a document entitled "Quitclaim Assignment" dated November 30, 2015, and recorded in the Penobscot County Registry of Deeds at Book 14057, Page 294, Fannie Mae received a purported assignment of the Mortgage from First Horizon Home Loans, a division of First Tennessee Bank, N.A. A copy of that assignment is filed herewith **Exhibit 6.**

29. By a document entitled "Assignment of Mortgage" dated October 22, 2021, and recorded in the Penobscot Registry of Deeds at Book 16262, Page 339, Fannie Mae purported to assign the Mortgage to DLJ Mortgage Capital, Inc. (hereafter "DLJ"). A copy of that assignment is filed herewith as **Exhibit 7.**

30. All rights of Fannie Mae to enforce the Loan or the Note and Mortgage evidencing it were extinguished by the judgment in favor of Morneault entered by the Bangor District Court on January 29, 2015.

31. At the time of the October 22, 2021, Assignment of Mortgage by Fannie Mae to DLJ Mortgage Capital, Inc., Fannie Mae had no remaining rights to enforce the Loan, or the

32. DLJ purported to assign the Mortgage to "1900 Capital Trust II, by US Bank Trust National Association, not in its Individual Capacity but Solely as Certificate Trustee" (hereafter "the Trust"), around March 4, 2025, (a copy of which assignment is filed herewith as **Exhibit 8)** and in connection with that assignment delivered the Note to the Trust.

33. At the time of the aforesaid assignment by DLJ to the Trust, the Note and the Mortgage were unenforceable.

34. On or about August 15, 2024, Longoria in her capacity as attorney for SPS and DLJ Mortgage Capital, Inc. signed a "Notice of Mortgagor's Right to Cure" letter addressed to Morneault relating to the Loan purportedly pursuant to 14 M.R.S. § 6111 (hereafter the "Default Letter"), a copy of which is filed herewith as **Exhibit 9**, and caused the Law Firm to mail the letter to Morneault by USPS First Class and Certified Mail.

35. The Default Letter signed by Longoria stated to Morneault "[y]our loan is in default for failure to make payments of principal and interest when due after December 23, 2014."

36. The Default Letter signed by Longoria and caused by Longoria as attorney for SPS to be sent to Morneault, asserted that $130,947.54 was past due on the Loan and that future payment obligations would continue to accrue on the Loan.

37. On December 4, 2024, Longoria, acting as attorney and agent for DLJ, and as agent for SPS as mortgage servicer for and agent of DLJ, caused the Law Firm to file in the United States District Court for the District of Maine as Case Number 1:24-cv-00416 a complaint against Morneault, signed by Longoria as attorney for DLJ, seeking a judgment of foreclosure with respect to the Mortgage and judgment for money alleged to be due on the Note. A copy of that complaint (hereafter the "DLJ Complaint"), without its exhibits, is filed herewith as **Exhibit 10,** and that court action is hereafter referred to as the 2024 Foreclosure Action.

**COUNT I**
(Against SPS and Longoria)
Violation of 32 M.R.S. § 11013 (7) & (8)

38. Plaintiff repeats and realleges the allegations of Paragraphs 1-37 above as if set forth fully in this Count I of this amended complaint.

39. SPS became the servicer and a debt collector with respect to the Loan years after it went into default in 2011.

40. At the time of the sending by the Law Firm of the Default Letter signed by Longoria and at the time of the commencement of the 2024 Foreclosure Action, SPS was acting on behalf of DLJ Mortgage Capital, Inc. as a debt collector with respect to the Loan.

41. At the time of the sending of the Default Letter by the Law Firm and through at least the assignment of the Mortgage to the Trust on or about March 4, 2025, SPS was conducting business within the State of Maine, the principal purpose of which was the collection of debts.

42. At the time of the sending of the Default Letter by the Law Firm and through at least the assignment of the Mortgage to the Trust, SPS was regularly collecting or attempting to collect through the prosecution of Maine court actions and court actions in other states and hiring of attorneys to prosecute such court actions, directly or indirectly, debts owed or due or asserted to be owed to others.

43. Since long before the sending of the Default Letter signed by Longoria by the Law Firm and through at least the assignment of the Mortgage to the Trust SPS on or about March 4, 2025, SPS used the mail system of the United States Postal Service and used other instrumentalities of interstate commerce in its debt collection activities.

44. Since long before the sending of the Default Letter signed by Longoria, and through the assignment of the Mortgage by DLJ to the Trust on March 4, 2024, SPS was a debt collector with respect to the Loan within the meaning of 32 M.R.S. § 11002(6) and 15 USC §1692a(6).

45. Prior to the sending of the Default Letter to Morneault, SPS had applied for and received from the Maine Bureau of Consumer Credit Protection Bureau a license to operate as debt collector in the State of Maine.

46. In connection with its servicing of the Loan, SPS was operating in Maine a debt collector pursuant to the license issued to it by the Maine Bureau of Consumer Credit Protection.

47. At the times of the sending of the default letter and the commencement of the 2024 Foreclosure Action, SPS was licensed in the majority of states in the United States as a debt collector and was operating in those states as a debt collector.

48. At the time that Longoria began performing debt collection activities with respect to the Loan, the Loan had been in default for at least ten years.

49. From January 1, 2023, through September 30, 2025, Longoria has caused to be commenced in the United District Court for the District of Maine 149 new court cases seeking foreclosures on properties of Maine consumers in which:

   a. All of the Complaints are or were based upon the Maine Civil Action foreclosure statutes, 14 M.R.S. Chapter 713, Subchapter 6 which includes in Section 6324 the right of foreclosing mortgagees to recover deficiency judgments;

   b. All the complaints initiating the 149 cases were signed by Longoria as attorney for the foreclosing mortgage owners; and

c. Except in the fewer than 10 of the 149 cases which sought only in rem relief where such cases involved suits against personal representatives of deceased mortgagors or against mortgagors having bankruptcy discharges, all of the other of the 149 complaints signed by Longoria included claims for money damages for money due on the notes secured by the affected mortgage, and claims for money damages for the borrower's alleged breach of contract for allegedly failing to repay borrowed money.

50. For more than the three years preceding the filing of this amended Complaint, Longoria has regularly engaged in debt collection activities in the Commonwealth of Massachusetts by:

a. The regular signing of and/or causing to be sent to borrowers of letters entitled "Notice of Intent to Foreclose Mortgage and Intent to Pursue Deficiency After Foreclosure of Mortgage," relating to mortgage foreclosures against Massachusetts property owners.

b. By representing creditors in court actions in the United States District Court for the District of Massachusetts where such actions seek court orders allowing foreclosures and also seek deficiency judgments for amounts owed on the mortgage debts.

c. By representing creditors in court actions in the United States District Court for the District of Massachusetts where such actions follow non-judicial foreclosures of mortgaged properties and seek court orders awarding money owed as deficiency balances on the mortgage debts.

51. Since years before Longoria's causing the Law Firm to send the Default Letter to Morneault and continuously through the date of this amended complaint, Longoria has regularly collected or attempted to collect, directly or indirectly, debts owed or due or asserted to be owed or due others.
52. Since years before Longoria's sending of the Default Letter and continuously through the date of this amended complaint, Longoria has been conducting business within the State of Maine as an attorney, the principal purpose of which is the collection of debts.
53. Since long before the sending of the Default Letter signed by Longoria by the Law Firm Longoria has caused the Law Firm to use the mail system of the United States Postal Service and to use other instrumentalities of interstate commerce in debt collection activities of herself and the Law Firm.
54. Since years before Longoria's sending of the Default Letter and continuously through the date of this amended complaint, Longoria has been a debt collector with respect to the Loan and hundreds of other loans within the meaning of 32 M.R.S. § 11002(6) and 15 USC § 1692a(6).
55. Longoria, acting as attorney and agent for SPS, caused to be filed the DLJ Complaint signed by Longoria more than 10 years after the last payment on the Loan by Morneault.
56. Longoria and SPS filed or caused to be filed the DLJ Complaint in their capacity as debt collectors, in violation of the provisions of 32 M.R.S. § 11013((7) & (8) prohibiting debt collectors from commencing debt collection actions more than 6 years after the consumer's last activity on the debt.

57. As a result of the wrongful filing of the DLJ Complaint and the commencement of the 2024 Foreclosure Action by SPS and Longoria, Morneault has been and is being required to incur legal fees and costs in the defense of that action.

58. As a result of the wrongful filing of the DLJ Complaint and the commencement of the 2024 Foreclosure Action by SPS and Longoria, Morneault has suffered and is suffering actual damages including emotional distress, loss of time from his business activities and related losses.

59. As a result of the wrongful filing of the DLJ Complaint and the commencement of the 2024 Foreclosure Action by SPS and Longoria, Morneault may be damaged by the loss of the value of his home, which is in excess of $190,000, if the 2024 Action Foreclosure judgement action results in a foreclosure judgment.

WHEREFORE, Morneault prays for a money judgment against SPS and Longoria, jointly and severally, for the actual damages of Morneault as are reasonable in the premises as provided for in 32 M.R.S. § 11054(1)(A), for additional statutory damages as provided for in 32 M.R.S. § 11054(1)(B), for costs of this action including reasonable attorney fees as provided for in 32 M.R.S. § 11054(D), and for such other and further relief as the court may deem appropriate.

**COUNT II**
(Against SPS and Longoria)
Violation of 32 M.R.S. § 11013 (2)

60. Plaintiff repeats and realleges the allegations of Paragraphs 1-59 above as if set forth fully in this Count II of this amended complaint.

61. The representations by Longoria in signing the Default Letter as attorney and agent for SPS that the sending of that letter “is authorized under the Law Court decisions of *Finch*

*v. U.S. Bank,* 2024 ME 2 (Me 2024) and *I.P. Morgan v. Moulton*, 2004 ME 13 (Revised March 19, 2024 (Me.2024)" was a false representation of the legal status of the debt that is the subject of that letter within the meaning of 32 M.R.S. § 11013(2)(B)(1) and 15 USC § 1692e(2).

62. The assertions in the Default Letter signed by Longoria as attorney and agent for SPS that $130,947.54 was owed on the Loan as of the date of that letter and that amounts would continue to accrue on the Loan after the date of that letter were false representations of the amount due on the Loan that is the subject of that letter within the meaning of 32 M.R.S. § 11013(2)(B)(1) & (2)(J) and 15 USC § 1692e(2)(B) & (10) as no amounts remained due or were continuing to come due on the Loan.

63. The assertions by Longoria on behalf of SPS in the DLJ Complaint signed by Longoria that the Loan is enforceable and that money is owed on the Loan and the assertions of the specific amounts of money alleged to be owed on the loan are false representations by SPS and Longoria to Morneault of the legal status of the debt and the amounts owed on the Loan.

64. As a result of the violations by SPS and Longoria of the provisions of 32 M.R.S. § 11013(2) and 15 USC § 1692e(2), Morneault has suffered and is suffering actual damages including emotional distress, loss of time from his business activities, legal fees in defending the wrongly commenced 2024 Foreclosure Action, and related losses.

WHEREFORE, Morneault prays for a money judgment against SPS and Longoria, jointly and severally, for the actual damages of Morneault as are reasonable in the premises as provided for in 32 M.R.S. § 11054(1)(A), for additional statutory damages as provided for in 32 M.R.S. § 11054(1)(B), for costs of this action including reasonable attorney fees as provided for

in 32 M.R.S. § 11054(D), and for such other and further relief as the court may deem appropriate.

**COUNT III**
(Against SPS)
Violation of 14 M.R.S. § 6113

65. Plaintiff repeats and realleges the allegations of Paragraphs 1-64 above as if set forth fully in this Count III of this amended complaint.

66. From long before the time of the sending of the Default Letter signed by Longoria and though the assignment of the Mortgage to the Trust by DLJ, SPS was conducting the kinds of servicing activities for mortgage loans which are described in 14 M.R.S. § 6113.1.F.

67. From long before the time of the sending of the Default Letter signed by Longoria and though the assignment of the Mortgage to the Trust by DLJ, SPS was acting as the mortgage servicer for DLJ. with respect to the Loan.

68. At all such times, SPS was a mortgage servicer with respect to the Loan within the meaning of 14 M.R.S. § 6113(B-1).

69. The actions of SPS described in Counts I and II above were violations by SPS of its duty of good faith owed to Morneault within the meaning of 14 M.R.S. § 6113(1)(A) & (2).

70. As a result of the breach by SPS of its duty of good faith owed by SPS to Morneault by the wrongful filing of the DLJ Complaint and the commencement of that action by Longoria, acting as agent for SPS, against Morneault, he has been and is being required to incur legal fees and costs in the defense of that action.

71. As a result of the breach by SPS of its duty of good faith owed by SPS to Morneault by its wrongful filing of the DLJ Complaint and the commencement of that action by

Longoria, as agent for SPS, Morneault has suffered and is suffering actual damages including emotional distress, loss of time from his business activities and related losses.

72. As a result of the wrongful filing of the DLJ Complaint and the commencement of the 2024 Foreclosure Action by SPS and Longoria, Morneault will be damaged by the loss of the value of his home which is in excess of $190,000 if the 2024 Action Foreclosure Judgement action results in a foreclosure judgment.

WHEREFORE, Morneault prays for a money judgment against SPS, for the actual damages of Morneault as are reasonable in the premises as provided for in 14 M.R.S. §6113(4), for costs of this action including reasonable attorney fees, and for such other and further relief as the court may deem appropriate.

**COUNT IV**
(Against SPS and Longoria)
Violation of 15 USC §1692e(2)

73. Plaintiff repeats the allegations of Paragraphs 1-72 above, including the preceding incorporated paragraphs as if set forth fully in this Count IV of this amended complaint.

74. As a result of the violations by SPS and Longoria of the provisions of 15 USC § 1692e(2)(B) & (10), Morneault has suffered and is suffering actual damages including emotional distress, loss of time from his business activities, legal fees in defending the wrongly commenced 2024 Foreclosure Action, and related losses.

WHEREFORE, Morneault prays for a money judgment against SPS and Longoria, jointly and severally, for the actual damages of Morneault as are reasonable in the premises as provided for in 15 USC §1692k(a)(1), for additional statutory damages as provided for in 15 USC §1692k(a)(2) for costs of this action including reasonable attorney fees as provided for in 15 USC §1692k(a)(3), and for such other and further relief as the court may deem appropriate.

**COUNT V**
(Against NewRez and Longoria)
Violation of 32 M.R.S. § 11013 (2)

75. Plaintiff repeats and realleges the allegations of Paragraphs 1-74 above as if set forth fully in this Count V of this amended complaint.

76. On April 18, 2025, Longoria caused to be filed on behalf of the Trust an "Amended Complaint" in the 2024 Foreclosure Action, which Amended Complaint was signed by Longoria as attorney for the Trust, a copy of which, without its exhibits, is filed herewith as **Exhibit 11.**

77. The Amended Complaint signed by Longoria in the 2024 Foreclosure Action was filed on behalf of the Trust by Longoria as its attorney and agent and debt collector, and at the direction of NewRez as the mortgage servicer and debt collector for the Trust with respect to the Loan.

78. Upon the assignment of the Mortgage to the Trust as alleged above, NewRez became the mortgage servicer of the Loan for the Trust and debt collector for the Trust with respect to the Loan and now controls and manages the prosecution of the 2024 Foreclosure Action on behalf of the Trust in said capacities as mortgage servicer and debt collector.

79. At the time that NewRez became the debt collector for the Loan, the Loan had been in default for more than ten years.

80. From long before filing of the Amended Complaint signed by Longoria in the 2024 Foreclosure Action though the present date, NewRez has been conducting the kinds of servicing activities for mortgage loans which are described in 14 M.R.S. § 6113.1.F.

81. Upon the assignment of the Mortgage to the Trust, Longoria became the attorney, agent and debt collector for the Trust and continues to prosecute the 2024 Foreclosure Action on behalf of the Trust in said capacities.

82. The Amended Complaint filed by the Trust in the 2024 Foreclosure Action references, relies upon and has attached to it as an exhibit the Default Letter signed by Longoria, a copy of which is filed with this amended complaint as Exhibit 9.

83. At the time of the filing of the Amended Complaint in the 2024 Foreclosure Action, NewRez was acting on behalf of the Trust as a debt collector with respect to the Loan.

84. Since long before the filing of the Amended Complaint in the 2024 Foreclosure Action, NewRez was conducting business within the State of Maine, the principal purpose of which was the collection of debts.

85. Since long before the filing of the Amended Complaint in the 2024 Foreclosure Action, NewRez was regularly collecting or attempting to collect through the prosecution of Maine court actions and court actions in other states and hiring of attorneys to prosecute such court actions, directly or indirectly, debts owed or due or asserted to be owed to others.

86. Since long before the filing of the Amended Complaint in the 2024 Foreclosure Action NewRez had used and was using the mail system of the United States Postal Service and other instrumentalities of interstate commerce in its debt collection activities.

87. With respect to the filing of the Amended Complaint in the 2024 Foreclosure Action, NewRez was a debt collector with respect to the Loan within the meaning of 32 M.R.S. § 11002(6) and 15 USC §1692a(6).

88. Years before the filing of the Amended Complaint in the 2024 Foreclosure Action, NewRez had applied for and received from the Maine Bureau of Consumer Credit Protection Bureau a license to operate as debt collector in the State of Maine.

89. In connection with its servicing of the Loan, NewRez is operating in Maine as a debt collector pursuant to the license issued to it by the Maine Bureau of Consumer Credit Protection.

90. For years before its filing of the Amended Complaint, NewRez has been conducting and continues to conduct business within the State of Maine, the principal purpose of which is the collection of debts.

91. For years before the filing of the Amended Complaint in the 2024 Foreclosure Action, NewRez had regularly been engaging in the collection or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due others.

92. Since years before its causing to be filed the Amended Complaint on behalf of the Trust, NewRez has been and continues to be a debt collector with respect to the Loan within the meaning of 32 M.R.S. § 11002(6) and 15 USC § 1692a(6).

93. The assertions by Longoria on behalf of NewRez and the Trust in the Amended Complaint filed in the 2024 Foreclosure Action that the Loan is enforceable and that money is owed on the Loan and the assertions of the specific amounts of money alleged to be owed on the loan are false representations by NewRez and Longoria to Morneault of the legal status of the debt and the amounts owed on the Loan within the meaning of 32 M.R.S. § 11013(2)(B)(1) & (2)(J) and 15 USC § 1692e(2)(A) & (1) as no amounts remained due or were continuing to come due on the Loan.

94. As a result of the violations by NewRez and Longoria of the provisions of 32 M.R.S. § 11013(2) and 15 U.S.C. § 1692e(2), Morneault has suffered and is continues to suffer actual damages including emotional distress, loss of time from his business activities, legal fees in defending the wrongly commenced 2024 Foreclosure Action, and related losses.

WHEREFORE, Morneault prays for a money judgment against NewRez and Longoria, jointly and severally, for the actual damages of Morneault as are reasonable in the premises as provided for in 32 M.R.S. § 11054(1)(A), for additional statutory damages as provided for in 32 M.R.S. § 11054(1)(B), for costs of this action including reasonable attorney fees as provided for in 32 M.R.S. § 11054(D), and for such other and further relief as the court may deem appropriate.

**COUNT VI**
(Against NewRez)
Violation of 14 M.R.S. § 6113

95. Plaintiff repeats and realleges the allegations of Paragraphs 1-94 above and as is set forth fully in this Count VI of this amended complaint.
96. From the time of the assignment of the Mortgage to the Trust. NewRez has been acting as the mortgage servicer for the Trust with respect to the Loan.
97. From long before the filing of the Amended Complaint in the 2024 Foreclosure Action to the present time, NewRez has been conducting the kinds of servicing activities for mortgage loans which are described in 14 M.R.S. § 6113.1.F.
98. At all such times, NewRez was a mortgage servicer with respect to the Loan within the meaning of 14 M.R.S. § 6113(B-1).

99. The actions of NewRez described in Count V above are and continue to be violations by NewRez of its duty of good faith owed to Morneault within the meaning of 14 M.R.S. § 6113(1)(A) & (2).

100. As a result of the breach by NewRez of its duty of good faith owed by NewRez to Morneault by the wrongful filing of the Amended Complaint in the 2024 Foreclosure Action and the continued prosecution of the 2024 Foreclosure Action by NewRez, acting as agent and mortgage servicer for the Trust, against Morneault, he has been and is being required to incur legal fees and costs in the defense of that action.

101. As a result of the breach by NewRez of its duty of good faith owed by NewRez to Morneault by its wrongful continued prosecution of the 2024 Foreclosure action as agent and mortgage servicer for the Trust, Morneault has suffered and is suffering actual damages including emotional distress, loss of time from his business activities and related losses.

WHEREFORE, Morneault prays for judgment against NewRez, for a money judgment for the actual damages of Morneault as are reasonable in the premises as provided for in 14 M.R.S. §6113(4), for costs of this action including reasonable attorney fees, and for such other and further relief as the court may deem appropriate.

**COUNT VII**
(Against NewRez and Longoria)
15 USC § 1692e(2)

102. Plaintiff repeats the allegations of Paragraphs 1-101 above, including the incorporated paragraphs as if set forth fully in this Count VII of this amended complaint.

103. As a result of the violations by NewRez and Longoria of the provisions of 15 USC § 1692e(2), Morneault has suffered and is suffering actual damages including

emotional distress, loss of time from his business activities, legal fees in defending the wrongly commenced 2024 Foreclosure Action, and related losses.

WHEREFORE, Morneault prays for a money judgment against NewRez and Longoria, jointly and severally, for the actual damages of Morneault as are reasonable in the premises as provided for in 15 USC §1692k(a)(1), for additional statutory damages as provided for in 15 USC §1692k(a)(2) for costs of this action including reasonable attorney fees as provided for in 15 USC §1692k(a)(3), and for such other and further relief as the court may deem appropriate.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands trial by jury on all counts of the First Amended Complaint

DATED: November 24, 2025

/s/ Thomas A. Cox
Thomas A. Cox, Esq. Me. Bar No. 1248
*Attorney for Plaintiff, Kevin M. Morneault*

P.O. Box 1083
Yarmouth, ME 04096
(207) 749-6671
tacsail@icloud.com